# United States District Court
# Central District of California
# Western Division

| | |
|---|---|
| LOS ANGELES WATERKEEPER, INC., | CV 15-04325 TJH (JCx) |
| Plaintiff, | |
| v. | Default Judgment |
| LIBERTY METAL RECYCLING, INC., *et al.*, | [22] |
| Defendants. | |

The Court has considered Los Angeles Waterkeeper, Inc.'s ["Waterkeeper"] motion for default judgment against Defendants Liberty Metal Recycling, Inc., Sindy Cardona, and Kender Arreaga [collectively, "Liberty"] on Claims 2, 4, 5, and 6, together with the moving papers.

The Clean Water Act, 33 U.S.C. § 1311, *et seq.*, prohibits the discharge of pollutants into waters of the United States not authorized by, or in violation of, the terms of a National Pollutant Discharge Elimination System permit. 33 U.S.C. § 1311. California's National Pollutant Discharge Elimination System permit is the Storm Water Permit.

Waterkeeper brought this action pursuant to the Clean Water Act, which allows

a private party to commence a civil action against persons, including corporations, that violate the Clean Water Act.  33 U.S.C. § 1365(a).

**Liability**

When considering a motion for default judgment, the Court must accept the factual allegations in the complaint regarding liability as true.  *Geddes v. United Fin. Grp.*, 559 F.2d 557, 560 (9th Cir. 1977).  However, Waterkeeper must establish, with evidence, its request for damages.  *See Geddes*, 559 F.2d at 560.

Waterkeeper alleged that Cardona and Kender Arreaga were not only the owners of Liberty Metal Recycling, but also the operators who involved themselves in the day to day operations of the business.

In Claim 2, Waterkeeper alleged that Liberty discharged contaminated storm water in excess of the maximum pollutant levels set by the Environmental Protection Agency and the Storm Water Permit.  Waterkeeper tested storm water discharge from Liberty thirty times between 2012 and 2014, and consistently found pollutant levels higher than the allowed amounts.

In Claim 4, Waterkeeper alleged that Liberty discharged harmful and contaminated storm water into the Receiving Waters.  The Environmental Protection Agency and the Storm Water Permit established the Water Quality Standard for the maximum levels of pollutants that are allowed in storm water discharge that flows into bodies of water.  Waterkeeper tested storm water discharge from Liberty into, among others, Compton Creek, Los Angeles River, and the Pacific Ocean [collectively "the Receiving Waters"] thirteen times between 2012 and 2014, and consistently found pollutant levels higher than the levels permitted by the Water Quality Standard.

In Claim 5, Waterkeeper alleged that Liberty failed to adequately develop and/or implement a Storm Water Pollution Prevention Plan ["SWPPP"] as mandated by the Storm Water Permit.  The Storm Water Permit requires industrial facilities to establish a SWPPP to limit the amount of pollutants in storm water discharge.  Liberty admitted, in its Annual Reports for 2011-2012 and 2012-2013, that it did not have a SWPPP.  On

May 20, 2014, Liberty filed a SWPPP.

In Claim 6, Waterkeeper alleged that Liberty failed to adequately develop and/or implement a Monitoring and Reporting Program ["M&RP"] as mandated by the Storm Water Permit.  Liberty indicated in its Annual Reports that it did not have a M&RP in place.  In Liberty's SWPPP filing on May 20, 2014, it indicated that it had just established a M&RP.

**Monetary Damages**

Waterkeeper seeks statutory damages that are all payable to the United States Treasury.  *See Sierra Club, Inc. v. Electric Controls Design, Inc.*, 909 F.2d 1350, 1354 (9th Cir. 1990).  The Clean Water Act sets the maximum statutory damage amount at $25,000.00 per day per violation.  33 USC § 1319(d).  California's Water Code sets the minimum statutory damage amount for Clean Water Act violations at $3,000.00.  Cal Water Code § 13385(i)(1).  California's statutory minimum applies to four types of violations, such as discharging storm water with pollutants over the relevant limits, but does not apply to the procedural violations alleged in Claims 5 and 6.

Liberty shall pay California's statutory minimum of $3,000.00 for each of the 43 violations alleged in Claims 2 and 4.  Additionally, Liberty shall pay $3,000.00 for each of the 1,520 violations alleged in Claims 5 and 6.  The total amount of monetary damages against Liberty shall be $4,689,000.00 – $3,000.00 for each of the 1,563 alleged violations – and shall be payable to the United States Treasury.

**Declaratory Judgment**

A declaratory judgment is appropriate when: (1) The judgment will serve a useful purpose in clarifying and settling the legal relations at issue; and (2) When the judgment will terminate and afford the prevailing party relief from uncertainty, insecurity, and controversy.  *McGraw-Edison Co. v. Preformed Line Prod. Co.*, 362 F.2d 339, 342 (9th Cir. 1966).  Here, a declaratory judgment that Liberty violated the Clean Water Act would be proper because it would serve the useful purpose of settling Liberty's liability.  Further, awarding declaratory judgment would afford Waterkeeper clarity and

security that Liberty is responsible for the violations of the Storm Water Permit and the Clean Water Act.  Thus, the Court declares that Liberty violated the Clean Water Act.

**Injunctive Relief**

A party may seek injunctive relief under the Clean Water Act.  *Sierra Club, Inc.,* 909 F.2d at 1354.  Courts may issue injunctive measures to enforce the requirements of Storm Water Permits, with the limitation that the injunction provisions be consistent with the requirements of the Storm Water Permit.  *Natural Res. Def. Council v. Southwest Marine, Inc.*, 236 F.3d 985, 1000-1002 (9th Cir. 2000).  Waterkeeper must establish:  (1) It suffered an irreparable injury; (2) remedies available at law are inadequate to compensate that injury; (3) the balance of hardships favors such relief; and (4) the public interest is not disserved by an injunction.  *Geertson Seed Farms v. Johanns*, 570 F.3d 1130, 1136 (9th Cir. 2009).

Here, Waterkeeper has suffered an injury in fact because its members' recreational benefits are curtailed by Liberty's pollution.  *See Natural Res. Def. Council v. Southwest Marine, Inc.*, 242 F.3d 1163, 1163 (9th Cir. 2001).  Further, there is nothing to suggest that Liberty stopped violating the Clean Water Act, leading to the reasonable conclusion that the violations are ongoing.  As such, Waterkeeper will continue to suffer injuries that monetary compensation could not wholly rectify.  Additionally, Liberty would not suffer significant hardship since the injunction would only prevent Liberty from continuing its illegal dumping.  Moreover, the public would benefit from the injunction because it would stop the illegal contamination of the Receiving Waters.  *See Natural Res. Def. Council*, 242 F.3d at 1163.  Therefore, the Court enjoins Liberty from continuing its polluting activities by ordering that Liberty comply with the Storm Water Permit.

**Attorneys' Fees and Costs**

The Clean Water Act provides the Court discretion to award reasonable litigation costs, including attorneys' fees, to the prevailing party.  33 U.S.C. § 1365(d).  Waterkeeper requests $37,113.90 in attorneys' fees, based on 69.23 hours by three

attorneys with hourly rates between $250.00 and $480.00.  Per Local Rule 55-3, the presumptively reasonable attorneys' fees award for a default judgment of $4,689,000.00 is $97,380.00.  Because the requested amount is less than the presumptively reasonable amount, the requested amount will be awarded.

The Court has the discretion to award costs to promote the Clean Water Act's goal of maintaining the "integrity of the Nation's waters by eliminating pollution." *Saint John's Organic Farm v. Gem Cnty. Mosquito Abatement Dist.*, 574 F.3d 1054, 1061 (9th Cir. 2009).  Thus, the Court will award costs incurred that promote the goals of the Clean Water Act, such as testing samples of storm water discharge, filing fees, and process servers.  Here, Waterkeeper requested $2,741.06 in costs, but included invoices that total $4,080.26.  Waterkeeper incurred around $2,000.00 in testing fees, $400.00 in filing fees, and $300 in process servers fees.  The requested costs are reasonable and were incurred to promote the goals of the Clean Water Act.  *See Saint John's Organic Farm*, 574 F.3d at 1061.

It is Ordered that the motion for default judgment be, and hereby is, Granted.

It is further Ordered, Adjudged and Decreed that Liberty Metal Recycling, Inc., Sindy Cardona, and Kender Arreaga have violated the Storm Water Permit and the Clean Water Act.

It is further Ordered, Adjudged and Decreed that Liberty Metal Recycling, Inc., Sindy Cardona, and Kender Arreaga be, and hereby are, Permanently Enjoined from violating the Storm Water Permit or the Clean Water Act, or both.

It is further Ordered, Adjudged and Decreed that Defendants Liberty Metal Recycling, Inc., Sindy Cardona, and Kender Arreaga shall pay to the United States Treasury $4,689,000.00.

𝕴𝖙 𝖎𝖘 𝖋𝖚𝖗𝖙𝖍𝖊𝖗 𝕺𝖗𝖉𝖊𝖗𝖊𝖉, 𝕬𝖉𝖏𝖚𝖉𝖌𝖊𝖉 𝖆𝖓𝖉 𝕯𝖊𝖈𝖗𝖊𝖊𝖉 that Defendants Liberty Metal Recycling, Inc., Sindy Cardona, and Kender Arreaga shall pay to Plaintiff $39,854.96, composed of $37,113.90 for reasonable attorneys' fees plus $2,741.06 for costs.

𝕴𝖙 𝖎𝖘 𝖋𝖚𝖗𝖙𝖍𝖊𝖗 𝕺𝖗𝖉𝖊𝖗𝖊𝖉 that Defendants are jointly and severally liable.

Date: March 17, 2016

_____

𝕿𝖊𝖗𝖗𝖞 𝕵. 𝕳𝖆𝖙𝖙𝖊𝖗, 𝕵𝖗.
𝕾𝖊𝖓𝖎𝖔𝖗 𝖀𝖓𝖎𝖙𝖊𝖉 𝕾𝖙𝖆𝖙𝖊𝖘 𝕯𝖎𝖘𝖙𝖗𝖎𝖈𝖙 𝕵𝖚𝖉𝖌𝖊

CC:FISCAL